UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
                                                            :
ANTONIO SALCEDO                               :
                          Petitioner,             :         04 Civ. 7964 (PAC) (GWG)
                                              :         OPINION & ORDER
            - against -                           :
                                              :
WILLIAM PHILLIPS, Acting Superintendent,  :
Greens Haven Correctional Facility,          :
                           Respondent.            :
                                              :
-------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

Pro se Petitioner Antonio Salcedo ("Salcedo") seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2000 conviction and sentence for Murder in the Second Degree under N.Y. Penal Law ("N.Y.P.L.") § 125.25(2) ("depraved indifference murder"), Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Fourth Degree, on the grounds that (1) the 16-year delay between the crime and the indictment violated his constitutional rights to due process and a speedy trial; (2) there was insufficient evidence to support his conviction for depraved indifference murder and therefore the conviction violated his due process rights; and (3) the sentence imposed was unduly harsh and therefore violated his Eighth Amendment right to be free from cruel and unusual punishment.

This case was referred to United States Magistrate Judge Gabriel W. Gorenstein, who issued his Report and Recommendation ("R&R") on September 13, 2005, recommending the denial of Salcedo's petition. On November 4, 2005, Salcedo timely filed objections ("Objections") to Magistrate Judge Gorenstein's determinations that there was sufficient evidence to support his conviction for depraved indifference

murder, and that the pre-indictment delay did not violate his due process rights. On July 26, 2006, the Court stayed this matter pending the New York Court of Appeals' decision on questions certified by the Second Circuit regarding the standard for depraved indifference murder applicable at the time of Salcedo's conviction. Salcedo v. Phillips, 04 Civ. 7964 (S.D.N.Y. July 26, 2006). The New York Court of Appeals ruled on the certified questions in Policano v. Herbert, 7 N.Y.3d 588 (2006). The Second Circuit applied the answers to the certified questions in Policano v. Herbert (Policano IV), _____ F.3d ____ (2d Cir., September 19, 2007). The Court now lifts the stay and denies Salcedo's petition as the Second Circuit did in Policano IV.

## DISCUSSION

### I. Consideration of a Report and Recommendation

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the magistrate's recommendations, the court is required to review the contested portions de novo. Pizarro v. Bartlett, 776 F.Supp. 815, 817 (S.D.N.Y. 1991). The court, however, "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F.Supp.2d 157, 159 (S.D.N.Y. 2000).

### II. Recommendations Lacking Objection

The Court finds no error in those portions of the R&R to which Salcedo has not objected. The Court therefore accepts and adopts Magistrate Judge Gorenstein's recommendation that the sentence imposed did not violate Petitioner's Eighth Amendment rights because it was within the applicable statutory range.

**III. Relevant Facts[1]**

Salcedo's conviction for depraved indifference murder was based on the killing of Jose Nuez on November 6, 1982. At his trial, the testimony of various witnesses testified that Salcedo lived at 145 Audubon Avenue in Manhattan with his common-law wife Aida Trinidad ("Trinidad"). Salcedo owned a social club named "Tonito's" located on the second floor of the same building, where liquor was served and several female prostitutes, including witnesses Marilyn Lopez ("Lopez") and Roxy Almonte ("Almonte"), worked. Antonio Zuniga ("Zuniga") and Anibal Hiraldo ("Hiraldo") also worked at the club, in part as bouncers. On the night of November 6, 1982, brothers Gregorio ("Gregory") and Jose Nuez went to Salcedo's club, where they had been customers in the past.

The witnesses presented at trial differed in their accounts of the events that occurred that night. Hiraldo testified that the Nuezs, who had caused problems at the club in the past, instigated a confrontation with Salcedo and Hiraldo because Gregory was unhappy with the behavior of one of the women working at the club. Hiraldo stated that Jose held a gun to his head, and that Salcedo in turn found a gun and threatened to shoot Gregory if Jose shot Hiraldo. Salcedo then disarmed Jose, and took both Gregory and Jose downstairs. Hiraldo remained upstairs until he heard two gunshots. Going downstairs to investigate, he saw Jose with his hands in the air, and Salcedo pointing the gun at him from approximately five feet away. Salcedo told Jose that "[t]hey were tired of [him] causing all those problems," Trial Transcript ("Tr."), 837, and the shot him in the head. Hiraldo testified that no one else was in the lobby at the time of the shooting.

---

[1] The Court adopts Magistrate Judge Gorenstein's thorough and complete recitation of the facts established at trial, see R&R at 1-26, and only briefly reviews here the facts relevant to its rulings.

3

Gregory Nuez's version of the events was different. He testified that he and Jose had left the club and then returned, but he states that when they arrived the second time, a man named "Tonito" answered the door and Tonito and Jose began pointing guns at one another. At this point, Tonito stated, "You left with problems and you've come back looking for problems." Tr. 152, 163-64. Gregory convinced both men to lower their weapons, and Tonito then ordered the Nuezs to "go downstairs and don't look back." Tr. 152, 164. Jose turned his head and was immediately shot, and when Gregory then turned to look he was shot in the back. Gregory saw that Jose was dead, and went to another building, from which he was taken to a hospital. Gregory did not identify Salcedo as "Tonito" at trial, and testified that that he did not see who shot him.

Lopez testified that Salcedo and Jose Nuez started arguing because Jose had supposedly spit in the face of one of the girls who worked at the club, and Hiraldo and Gregory, who was very drunk, became involved in the argument. Salcedo ultimately pushed Jose out of the door and told him he had to leave, while Hiraldo did the same to Gregory. Salcedo and Hiraldo followed the Nuezs downstairs to the lobby, where Salcedo shot Jose from approximately two feet away. He then began firing at Gregory, who ran out of the building. Lopez counted five shots in all.

Zuniga testified only that he heard an argument at the door, that Salcedo and Hiraldo left the apartment, and that one minute later he heard two shots.

Almonte testified that the Nuezs were drunk and disorderly when they arrived at the social club, and that the men working at the club eventually tried to remove them. She went to another room at that time, from which she heard Salcedo say

something along the lines of "[p]ut the gun away." Tr. 651-52.  Shortly thereafter she heard 4 or 5 shots.

An autopsy showed that Jose Nuez was killed by a single gunshot to the left side of his face, fired from point-blank range.  Gregory Nuez was treated for a single gunshot wound to his upper abdomen.  New York Police Department ("NYPD") investigators recovered two bullets from the crime scene.

The morning after the shooting, November 7, 1982, Salcedo was interviewed by a NYPD detective, and gave his name as "Tony Pena."  He did not claim during that interview to have been with his wife, Trinidad, at the time of the shooting.[2]  At some point shortly after being interviewed, Salcedo left New York and went to Puerto Rico.  He remained there for an uncertain period, but while there, Salcedo changed his appearance by cutting his hair differently and removing his beard and mustache.  Salcedo's wife, Trinidad, joined him in Puerto Rico.  When they came back to New York, they did not return to their former home at 145 Audobon Ave.  In May 1998, Detective John Bourges learned that "Tony Pena" was in Ciales, Puerto Rico.  He traveled to Puerto Rico in September 1998 and located Trinidad's mother, who, shown a photograph of "Tony Pena," identified him as "Antonio Salcedo."  Using that name he discovered Salcedo's residence in New York and arrested him on September 11, 1998.  Salcedo was indicted on or about September 29, 1998.

**III. Habeas Corpus Standard of Review**

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state

---

[2] Trinidad, also interviewed on November 7, 1982, similarly did not inform the investigators that Salcedo had been with her at the time of the shooting.

court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).  There is no question that the claims presented here were adjudicated on the merits, and therefore the deferential standard of § 2254(d) applies.  State court factual findings are "presumed to be correct" and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. 2254(e)(1).

A decision by a state court is "contrary to" clearly established law if it "applies a rule that contradicts the governing law set forth [by the Supreme Court]" or if it "confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  A federal court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied a Supreme Court case incorrectly.  See Bell v. Cone, 535 U.S. 685, 699 (2002).  "Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).

**IV. Pre-Indictment Delay**

A petitioner claiming a due process violation based upon pre-indictment delay "must show that he suffered actual prejudice as the result of the delay and that the delay was an intentional device to gain a tactical advantage." Denis v. Upstate Corr.

Facility, 361 F.3d 759, 760 (2d Cir. 2004) (citing United States v. Marion, 404 U.S. 307, 324 (1971)). Salcedo fails to demonstrate either.

## A. Actual Prejudice

An indictment brought within the statute of limitations "has a strong presumption of validity." United States v. Cornielle, 171 F.3d 748, 752 (2d Cir. 1999). There is no statute of limitations in New York for second degree murder. See CPL §30.10(2)(a); N.Y.P.L. § 125.25. The sole evidence presented by Salcedo to overcome the validity presumption is his assertion that the 16-year delay deprived him of a "potential alibi witness" by his common-law wife, Aida Trinidad, who died the year before his arrest. Objections at ¶ 5. Salcedo asserts that "in light of the close relationship between [himself] and Ms. Trinidad, it is possible that Ms. Trinidad was with [him] in apt. 6F, where [he] lived, at the time of the crime." R&R at 31 (internal quotation omitted). When they were interviewed immediately after the shooting in 1982, neither Salcedo nor Trinidad informed police of this supposed alibi. Neither said they were with one another at the time of the shooting. Moreover, five separate witnesses testified either that Salcedo was the shooter or that he was in the social club immediately before the shooting. Salcedo's unsupported speculation that Ms. Trinidad, were she still alive, might conceivably concoct testimony inconsistent with her prior statement due to their "close relationship" is totally inadequate to demonstrate actual prejudice.

## B. Tactical Advantage

Similarly, Salcedo has not presented a shred of evidence tending to suggest that the delay in the indictment was caused by a Government attempt to gain tactical advantage. Salcedo's argument is, in essence, that the NYPD was incompetent in

7

failing to track him down sooner than it did, despite his lying to its investigators, providing false names, fleeing to Puerto Rico, and changing his appearance and residence in order to avoid discovery.  Even assuming the delay was caused entirely by the NYPD's lack of diligence, rather than Salcedo's own actions, such a lack of police diligence does not constitute a due process violation absent "evidence that the Government engaged in any deliberate actions to delay the indictment in this case for its own benefit." United States v. Silberstein, 2003 WL 21488024, at * 4 (S.D.N.Y. June 27, 2003).  Salcedo has presented no such evidence.

**V. Sufficiency of the Evidence of Depraved Indifference Murder**

Salcedo argues that there was insufficient evidence to support his conviction for depraved indifference murder, because the evidence showed that if he killed Jose Nuez, he did so intentionally and not with depraved indifference.  In reviewing the sufficiency of the evidence supporting a conviction, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).  The New York Court of Appeals' Policano decision clarified the elements and necessary proof of depraved indifference murder under New York law at the time of Salcedo's conviction.  Applying the law as set forth in Policano, the Court cannot hold that insufficient evidence existed to allow a rational fact-finder to find all the elements of depraved indifference murder, and Salcedo's sufficiency of the evidence claim must therefore be rejected.

**A. The Elements of Depraved Indifference Murder**

In Policano, the Court of Appeals held that the law of depraved indifference murder in New York was consistent or static between its decisions in People v. Register, 60 N.Y.2d 270 (1983) and People v Sanchez, 98 N.Y.2d 373 (2002), a period which encompasses Salcedo's trial and conviction. See Policano, 7 N.Y.3d at 595.[3] During this period, the legal sufficiency of the evidence needed to establish guilt for depraved indifference murder was established by proof of the following elements: "that defendant (1) recklessly engaged in conduct (2) which created a grave risk of death to another person (3) thereby causing the death of another person (4) under circumstances evincing a depraved indifference to human life." Id. at 602.[4] The required mens rea was recklessness, and "under circumstances evincing a depraved indifference to human life" defined the objective factual setting in which the defendant's conduct occurred. Id.

As to the intersection of intentional and depraved indifference murder, the rule of Register and Sanchez was that

> where both intentional and depraved indifference murder were charged in one-on-one shootings or knifings, these counts were submitted to the jury for it to sort out the defendant's state of mind unless there was absolutely no evidence whatsoever that the defendant might have acted unintentionally. That a defendant's acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty verdict on a theory of depraved indifference. To the contrary…under the Register formulation the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial evidence of intent – for example, a point-blank shooting of the victim in the head – likewise demonstrated depraved indifference.

---

[3] The court also ruled that alterations in the law of depraved indifference murder produced by decisions following Sanchez were not retroactive, see Policano, 7 N.Y.3d at 689-90, and they therefore do not apply to the present matter.

[4] Salcedo contests only the sufficiency of the evidence that he acted recklessly, rather than intentionally.

9

Id. at 600-01. A one-on-one shooting could properly result in a conviction for depraved indifference murder where "a rational jury could have 'harbored a reasonable doubt that the homicide…was intentional – i.e. that defendant's conscious objective [was] to cause [the victim's death].'" Id. at 598 (quoting Sanchez, 98 N.Y.2d at 377). The question of the defendant's state of mind was one for the jury, and only in extreme cases could the court rule as a matter of law that the evidence did not support a finding of recklessness rather than intentionality. See Policano 7 N.Y.3d at 599 (collecting cases), 600-01.

**B. The Evidence Supports a Finding that Salcedo Killed Jose Nuez Recklessly**

Given the standard for jury findings of recklessness set forth in Policano and the necessity to view the evidence in the light most favorable to the prosecution, the Court must rule that a rational jury could have found Salcedo guilty of depraved indifference murder, under New York law as it existed at the time of Salcedo's conviction. The most favorable view of the evidence is that the Nuez brothers arrived at Salcedo's social club, and were both highly intoxicated and confrontational. Salcedo insisted that they leave, and in the course of the dispute, Nuez and Salcedo both drew weapons. Jose ultimately relinquished his gun, and Salcedo escorted both Nuezs from the club and down to the lobby at gunpoint, demanding that they walk straight out of the building without turning around. The Nuezs then attempted to turn to face Salcedo, and Salcedo immediately fired one shot at Jose and one shot at Gregory. Salcedo did not, however, take any steps to prevent Gregory from leaving after the initial round of gunfire; Gregory was able to look and determine that his brother was dead, and then make his way to a nearby building to seek assistance.

While these facts could certainly support a finding that Salcedo intended to kill one or both of the Nuez brothers, the court cannot say that there is "no evidence whatsoever that the defendant might have acted unintentionally." Id. at 601. Rather, this view of the evidence provides reason to doubt that Salcedo intended the death of Jose Nuez. These facts do not indicate that Salcedo bore any pre-existing personal animosity towards the victim, indeed the Nuez brothers were permitted to enter the club. Rather, the facts suggest that Salcedo was attempting to maintain order in his club. A rational juror could doubt that Salcedo would kill known patrons of his club, as a reputation for killing unruly customers would likely harm his business. If Salcedo did intend to kill Nuez, rather than merely remove him from his premises, a juror might wonder why he would do it in the publicly accessible lobby in a manner guaranteed to draw attention, rather than more quietly in the club itself, where it could conceivably be concealed. Similarly, Salcedo's failure to kill Gregory Nuez could certainly suggest a lack of pre-meditated intent, as it all but guaranteed that Salcedo's killing of Jose would be revealed to the authorities. Firing a single shot into Gregory's upper abdomen or lower back[5] does not plainly indicate an intent to kill him, and Salcedo appears to have made no effort to finish him off, or even to prevent him from leaving the building to get help. In combination, these facts present at least some evidence that Salcedo did not intend to kill Nuez.

The facts could, moreover, allow a juror to find that this was the type of "instantaneous, impulsive shooting – perhaps [intended] to disable or frighten [Jose Nuez], rather than kill him," which the Court of Appeals has found to support a finding of

---

[5] The evidence presented to the jury on this point was inconsistent, but either version could be credited without altering the relevant inferences to be drawn from the location of the injury.

reckless rather than intentional murder. Sanchez, 98 N.Y.2d at 377. A juror could have inferred from the testimony that, Salcedo, having already had to disarm a gun-wielding Jose, took no chances with the Nuezs and attempted to disable them at the first sign that they were disobeying his orders to leave the building without turning around. Gregory's testimony shows that Salcedo shot only after they disobeyed that order, and the fact that Salcedo fired only a single, non-lethal shot at Gregory, aimed at no vital organ, would be circumstantial evidence of such an intent to disable. Salcedo also fired only a single shot at Jose, rather than a number of shots designed to insure his death, and there is no evidence that Salcedo checked to be sure he was dead. There is, therefore, at least some evidence from which a jury might find that Salcedo was merely indifferent to whether he killed the Nuezs in the course of disabling them, precisely the type of finding that supported a depraved indifference conviction under Register. See Policano, 7 N.Y.3d at 600-01.

   The Court's finding that the facts here support a depraved indifference conviction is compelled by the New York Court of Appeals' holding in Policano. The Second Circuit recently applied the teaching of the New York Court of Appeals' Policano decision and dismissed Policano's § 2254 petition in Policano IV. _____ F.3d _____ (September 19, 2007). There, Policano had been in two fights with the victim six days before the murder. In the first fight, the defendant knocked the victim unconscious. Later the same day, the victim struck the defendant with a metal pipe, putting him in the hospital. Interviewed by the police at the hospital, Policano told them he would "take care of" this matter himself and declined police intervention.

Six days later, the defendant encountered the victim on a street corner. The sole eyewitness testified that he first spotted the defendant when he was 13-15 feet from the victim. The witness looked away, and heard a gunshot seconds later. The witness then ran 50 feet before turning to look back, and saw the victim with his hand over his face and Policano three to five feet away from him. The witness continued to run off and heard two more shots as he did so. The autopsy showed the victim had been shot twice in the head and once in the neck while he was standing, and then shot again, in the right thigh, once he was on the ground. Policano had consumed crack 45 minutes before the shooting.

The New York Court of Appeals found that these facts supported a conviction for depraved indifference murder. Despite Policano's existing grudge against his victim, his suggestion that he would "take care of" it himself, and his repeated and deliberated firing of three shots at the victim's head, followed by a further shot once the victim was already on the ground, the court held that a jury could find the killing reckless rather than intentional. The court pointed to the evidence that the defendant used crack prior to the shooting, that the final shot hit the victim's thigh rather than a vital organ, that the incident "erupted spontaneously after a chance encounter on the street," and that it occurred in a public place. Id. at 601. The court also noted that based on these facts there was "considerable doubt that he acted with premeditation or sought out Phillips to seek revenge." Id.

The evidence of Policano's intent provided by these facts is stronger than the evidence of Salcedo's intent. The evidence, viewed in favor of the prosecution, does not demonstrate any serious grudge on the part of Salcedo such as Policano possessed,

13

nor is there evidence of pre-meditation comparable to Policano's statement to police that he would "take care of" it.  Salcedo shot Jose Nuez once in the face, and shot Gregory once in the lower torso, while Policano shot his victim three times in the head and neck and yet again when the victim was already on the ground.  With the exception of the pre-crime ingestion of crack, heroin and perhaps alcohol as well, the factors listed by the New York Court of Appeals either do not meaningfully distinguish Policano's actions from Salcedo's, or present little reason to suspect Policano did not act intentionally.  As to Policano's use of controlled substances, in the absence of any evidence presented to the jury that Policano was impaired in any relevant way, that does not outweigh the other, greater, evidence of Policano's intent as compared to Salcedo's.  The New York Court of Appeals having held that, on similar evidence in Policano, that a rational trace of fact could have convicted the defendant of depraved indifference murder, this Court finds the evidence in this matter was sufficient to sustain Salcedo's conviction.

      While the New York Court of Appeals subsequently changed its interpretation of depraved indifference murder, that does not mean that Salcedo did not have fair warning of the then applicable law on depraved indifference murder at the time of his trial and conviction.  Salcedo's conviction and its affirmance did not involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  On this record, as the Second Circuit held in Policano IV, it cannot be said "that no reasonable juror could have found beyond a reasonable doubt that Policano acted unintentionally."  Policano v. Herbert, _____ F.3d _____ (2d Cir. September 19, 2007).  The same is true here, and, accordingly, Salcedo is not entitled to relief pursuant to 28 U.S.C. § 2254.

**C. Certificate of Appealability**

The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner has made a "substantial showing" when "reasonable jurists could debate whether…the petition should have been resolved in a different manner" or the "issues presented [are] adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation omitted). While the Court believes that the Second Circuit's Policano IV decision of September 19, 2007 requires denial of Salcedo's position, the evidence of intentional murder in this matter is not the same as the depraved indifference facts of Policano. Accordingly, the Court believes the insufficiency of the evidence claim is "adequate to deserve encouragement to proceed further," and will grant a certificate of appealability on that claim.[6]

## CONCLUSION

Salcedo's petition for a writ of habeas corpus is DENIED. Pursuant to 28 U.S.C. § 2253(c), the Court grants Salcedo a certificate of appealability as to his challenge to the sufficiency of the evidence supporting his conviction for depraved indifference murder. Salcedo's other claims (prejudicial delay between the crime and indictment and Eighth Amendment) are without merit and the Court denies such certificate as to them. The Clerk of the Court is directed to close out this case.

Dated: New York, New York
      October 22, 2007　　　　　　　　　　　　　　　　SO ORDERED

　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　PAUL A. CROTTY
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[6] Salcedo has not made a substantial showing of a denial of a constitutional right in connection with the pre-indictment delay or his sentence, and he has not pursued his Eighth Amendment complaint.

15

Copies Mailed To:

Magistrate Judge Gabriel W. Gorenstein

Antonio Salcedo
00-A-1316
Clinton Correctional Facility Annex
P.O. Box 2002
Dannemora, NY 12925

Susan Axelrod
New York County District Attorney's Office
1 Hogan Place
New York, NY 10280

## C. Certificate of Appealability

The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner has made a "substantial showing" when "reasonable jurists could debate whether...the petition should have been resolved in a different manner" or the "issues presented [are] adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation omitted). While the Court believes that the Second Circuit's Policano IV decision of September 19, 2007 requires denial of Salcedo's position, the evidence of intentional murder in this matter is not the same as the depraved indifference facts of Policano. Accordingly, the Court believes the insufficiency of the evidence claim is "adequate to deserve encouragement to proceed further," and will grant a certificate of appealability on that claim.[6]

## CONCLUSION

Salcedo's petition for a writ of habeas corpus is DENIED. Pursuant to 28 U.S.C. § 2253(c), the Court grants Salcedo a certificate of appealability as to his challenge to the sufficiency of the evidence supporting his conviction for depraved indifference murder. Salcedo's other claims (prejudicial delay between the crime and indictment and Eighth Amendment) are without merit and the Court denies such certificate as to them. The Clerk of the Court is directed to close out this case.

Dated: New York, New York
October 22, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge

---

[6] Salcedo has not made a substantial showing of a denial of a constitutional right in connection with the pre-indictment delay or his sentence, and he has not pursued his Eighth Amendment complaint.

15

Copies Mailed To:

Magistrate Judge Gabriel W. Gorenstein

Antonio Salcedo
00-A-1316
Clinton Correctional Facility Annex
P.O. Box 2002
Dannemora, NY 12925

Susan Axelrod
New York County District Attorney's Office
1 Hogan Place
New York, NY 10280